UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

**CAINE J. WILLE**,

                Plaintiff,

v.                                 **Case No. 13-cv-1024-pp**

**JEFFREY PUGH, SARAH BARTH,
MARIO CANZIANI, KYLE ESLINGER,
and CHRISTOPHER BUESGEN,**

                Defendants.
_____

**DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES
(DKT. NO. 88)**
_____

       The pro se plaintiff is a former Wisconsin state prisoner. He alleges that the defendants, who are staff members at the Stanley Correctional Institution, put his safety at risk in violation of the Eighth Amendment to the United States Constitution by transferring him to the Wisconsin Secure Program Facility (WSPF) despite the plaintiff's warning that transferring him posed safety concerns based on his personal relationship with officers there. The defendants have filed a motion for summary judgment for failure to exhaust administrative remedies. The court will deny the defendants' motion.

**ALLEGATIONS IN THE COMPLAINT**

       The second amended complaint alleges that the plaintiff had, before he was incarcerated, personally known several correctional officers employed at the Prairie du Chien Correctional Institution and the WSPF. Second amended

1

complaint, Dkt. No. 70 at 7. He became incarcerated in July 2012. In December 2012, a social worker at Stanley Correctional Institution (where the plaintiff then was housed) notified him that she was recommending he be transferred to WSPF. Id. The plaintiff states that he knew he would not be safe at WSPF, and that he notified the social worker (Barth), a Lt. Elsinger and Stanley "Chief of Police" about his fears for his safety, based on things he knew about WSPF staff members. In particular, he had "party'd [sic] with, served alcohol to through tavern services, school" various WSPF members. Second Amended Complaint, Id. Also, the plaintiff's "cousin murdered one sergeant's son's best friend and continues to walk a free person and that could subject [the plaintiff] to be a retaliatory target at the hands of W.S.P.F. staff members." Id. Despite the plaintiff's expressing these concerns to the Stanley staff, they refused to change the recommendation. Id. Once he reached WSPF, the plaintiff alleges, various things happened to him, including denial of food, toilet paper, medications and eating utensils. Id. at 8. He argued that the DOC's having put him in a hostile situation at the WSPF, and the Stanley staff's failure to change the recommendation, violated his Eighth Amendment protection against cruel and unusual punishment, his Fourteenth Amendment due process rights, his First Amendment rights, and other assorted rights. Id. at 8-9.

## FACTS[1]

Ms. Welcome Rose (Rose) is a corrections complaint examiner (CCE) for the Wisconsin Department of Corrections (DOC). Dkt. No. 91 at ¶2. As CCE,

---

[1] This section is taken from the Defendants' Proposed Findings of Fact, which are undisputed. Dkt. No. 90.

she receives and investigates appeals made to the DOC Secretary regarding adverse decisions on inmate complaints, and makes appropriate recommendations concerning the same. Id.

The DOC maintains an Inmate Complaint Review System (ICRS) in Wisconsin adult correctional facilities. The purpose of the ICRS is to afford inmates in adult institutions a process by which grievances may be expeditiously raised, investigated, and decided. Id. at ¶3. An inmate begins the ICRS complaint process by filing a complaint with the Institution Complaint Examiner (ICE) at his institution, consistent with the provisions of Wis. Admin. Code DOC §310. Id. at ¶4. After receiving an offender complaint, the intake person at the ICE office either returns the complaint to the inmate or forwards it to the ICE for action. Id.

In accordance with Wis. Admin. Code DOC §310.09(1) and (3), the ICE shall return, and not process as complaints, submissions that do not meet the following requirements:

>  a. Be typed or written legibly on forms supplied for that purpose.
>  b. Be signed by the inmate.
>  c. Not contain language that is obscene, profane, abusive, or threatens others, unless such language is necessary to describe the factual basis of the substance of the complaint.
>  d. Be filed only under the name by which the inmate was committed to the department or the legal name if an inmate has had a name change.
>  e. Contain only one issue per complaint, and shall clearly identify the issue.

Id. at ¶5. Pursuant to Wis. Admin. Code DOC §310.09(2), ICRS submissions also may be returned if an inmate has filed more than two complaints per calendar week, except that the ICE may waive this limit for good cause. Rose

Id. at ¶6. In deciding whether to return a complaint due to this limitation, the ICE excludes complaints that raise health and personal safety issues. Id. Pursuant to Wis. Admin. Code DOC §310.09(4), an ICE may also return an ICRS submission to an inmate and direct the inmate to attempt to resolve the issue before accepting the ICRS submission for filing. Id. at ¶7.

If an inmate complaint is not returned, the ICE processes it. In that case, the ICE recommends to a reviewing authority: (a) rejection, (b) dismissal, or (c) affirmance of the complaint. Id. at ¶8. The "reviewing authority" means the warden, bureau director, administrator, or designee authorized to review and decide an inmate complaint at the institution level. Id. If the ICE does not return or reject an inmate complaint, and if the reviewing authority makes an adverse decision on an inmate complaint, the inmate must then appeal the reviewing authority's decision by filing a written request for review with the CCE's office, pursuant to Wis. Admin. Code DOC §§310.07(4), (6), (7), and 310.13. Id. at ¶9. The Office of the Secretary for the DOC then makes a final decision on the complaint. Id.

In her affidavit, Rose indicates that in her capacity as CCE, she has diligently searched and examined the regularly conducted business records of her office, specifically with respect to inmate complaints and appeals the plaintiff has filed. Id. at ¶0, Ex. A, Inmate Compl. History Report. During the course of her search, Rose found that the plaintiff had submitted three offender complaints related to the allegations in this lawsuit.

4

First, the plaintiff submitted an offender complaint that the ICE returned to him on February 22, 2013. Id. at ¶12, Ex. B at 1-2. The complaint raised referenced facts, none of which clearly identified an issue the plaintiff wanted addressed, including staff members' drug and alcohol use, the plaintiff's detention in TLU [temporary lockup], and his dissatisfaction with being transferred to "Boscobel" (WSPF). Id. The letter returning the offender complaint states that the complaint materials were being returned for the following reason: "Complaints shall contain only one issue and that issue shall be clearly identified [DOC 310.09(1)(e)]." Id.

Second, Rose found an offender complaint that the ICE returned to the plaintiff on February 26, 2013. Id. at ¶13, Ex. C at 1-2. This complaint alleged that the plaintiff was "threatened over the Matti ordeal" by an officer and a sergeant, without explaining what the Matti ordeal was. Id. The plaintiff also complained that the sergeant should not know his business with Matti, or know where his kid lives or where the plaintiff lives, arguing that this was a security breach. Id. He further alleged that certain staff members used drugs and alcohol. Id. Finally, the plaintiff argued he should not have been transferred to WSPF. Id. The letter returning the offender complaint to the plaintiff states that the complaint materials were being returned for the following reason: "Complaints shall contain only one issue and that issue shall be clearly identified [DOC 310.09(1)(e)]." Id.

Third, on April 20, 2013, the plaintiff signed Offender Complaint WCI-2013-7846. Id. at ¶14, Exh. D at 11. In Complaint WCI-2013-7846, under the

5

"State Your Complaint" section, the plaintiff alleged that on February 28, 2013, an officer and a sergeant brought him out of his cell, put him in another room, threatened him, and then sexually assaulted him. Id. He alleged that the sexual assault and threats occurred to keep him from "exposing Nelson's illegal activity (doing & selling drugs, robbing houses, etc.)." Id. The only mention of the transfer to WSPF was under the "Name(s) of people who have information about this complaint" section of the offender complaint. Id. There, the plaintiff listed: "Caine Wille, Nicole Nelson, Sgt Sculli and Stanley Staff because I told them about Nelson, Pelke and Matti and the problems but they sent me anyways." Id. He also references an unnamed sexual assault policy that he believes allows complaints regarding sexual assaults to be filed at any time. Id.

On April 22, 2013, the ICE acknowledged receipt of Offender Complaint WCI-2013-7846 and labeled the complaint "Staff Sexual Misconduct." Id. at ¶15, Ex. D at 10. The brief summary states: "Inmate complains regarding sexual assault." Id. On April 30, 2013, the ICE dismissed Offender Complaint WCI-2013-7846 with modification as follows:

> DAI Policy and Procedure 310.00.01, Inmate Complaints Regarding Staff Misconduct, states in part, "If a complaint alleges staff sexual misconduct involving an inmate, the ICE shall not interview the complaining inmate or anyone else, but instead shall immediately refer the complaint to the Warden to ensure processing in compliance with Executive Directive 16A." Based on the above, this complaint is dismissed with modification. The modification being that it has been forwarded to the Warden's Office for determination on whether or not an Executive Directive 16A violation occurred. No further action is necessary by this office.

6

Case 2:13-cv-01024-PP   Filed 09/09/15   Page 6 of 14   Document 93

Id. at 9. On May 7, 2013, in agreement with the ICE's recommendation, the reviewing authority dismissed Offender Complaint WCI-2013-7846 with modification. Id. at ¶16, Ex. D at 8.

On May 15, 2013, the CCE acknowledged receipt of an appeal of Offender Complaint WCI-2013-7846. Id. at ¶17, Ex. D at 6-7. The CCE recommended that Offender Complaint WCI-2013-7846 be dismissed with modification. Id. at 5. On May 17, 2013, the Office of the Secretary, in agreement with the CCE's recommendation, dismissed Offender Complaint WCI-2013-7846 with modification. Id. at 4.

The plaintiff did not file any other offender complaints regarding the allegations raised in this lawsuit. Id. at ¶18.

## DISCUSSION

A. <u>Summary Judgment Standard</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. <u>Exhaustion of Administrative Remedies Law</u>

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Exhaustion of administrative remedies is a condition precedent to suit. <u>Dixon v. Page</u>, 291 F.3d 485, 488 (7th Cir. 2002) (citing <u>Perez v. Wis. Dep't of Corr.</u>, 182 F.3d 532, 535 (7th Cir. 1999)).

C. <u>Discussion</u>

The defendants contend that the plaintiff did not properly exhaust available administrative remedies because the ICE returned unprocessed the first two offender complaints he submitted, and because complaint WCI-2013-7846 does not address the plaintiff's claim in this lawsuit.

8

Case 2:13-cv-01024-PP   Filed 09/09/15   Page 8 of 14   Document 93

In response, the plaintiff first contends that the exhaustion requirement does not apply to Eighth Amendment failure to protect claims, such as his. The plaintiff is mistaken. The Prison Litigation Reform Act's exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); see also Lewis v. Washington, 300 F.3d 829, 835 (7th Cir. 2002) (affirming dismissal of prisoner's failure to protect claim for failure to exhaust administrative remedies).

Next, the plaintiff argues about the merits of his claim. He contends that the defendants' motion for summary judgment goes beyond the scope of this lawsuit (it is not clear how) and that he needs a jury trial to determine if the defendants violated his rights. The plaintiff indicates that he possesses evidence to prove that the defendants violated his rights. The plaintiff also states that he is open to dismissal of the case without prejudice so that he may file at a later date, if necessary.

It is undisputed the plaintiff submitted two offender complaints that the ICE returned to him unprocessed because they did not comply with Wis. Admin. Code §DOC 310.09(1)(e), which requires complaints to contain only one issue and to clearly identify the issue. The ICE did not process the complaints because they contained multiple issues. The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural

9

rules. Woodford v. Ngo, 548 U.S. 81, 88, 93 (2006); see also Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). These complaints, which the ICE did not accept because they violated ICRS submission rules, did not exhaust the plaintiff's administrative remedies.[2]

The plaintiff's offender complaint, WCI-2013-7846, complains about an alleged assault that occurred after he was at WSPF. It appears that the plaintiff's safety concerns about the transfer to WSPF, which he allegedly related to the Stanley Correctional Institution defendants and upon which he bases this lawsuit because the defendants transferred him anyway, came true after he transferred to WSPF.[3] The offender complaint mentions "Stanley Staff" in the section where it asks for names of people who have information about the complaint. Dkt. No. 91 at ¶4, Ex. D at 11. There, the plaintiff stated: "Caine Wille, Nicole Nelson, Sgt. Sculle and Stanley Staff because I told them about Nelson, Pelke and Matti and the problems but they sent me anyways." Id. The issue is whether this statement put officials on notice of the plaintiff's claim, as

---

[2] The court is troubled that the letters accompanying the returned complaints did not provide instruction as to what the plaintiff should do next if he wanted to exhaust. Presumably, he should have submitted an offender complaint that complied with the rules, because there does not appear to be an appeal process for returned complaints. See Wis. Admin. Code §310.09(3). (There is, however, an appeals process for rejected complaints. See Wis. Admin. Code §310.11(6).) The court need not delve into this issue because, as explained below, WSPF-2013-7846 exhausted the plaintiff's administrative remedies as to his failure to protect claim.

[3] Plaintiff filed a lawsuit about the WSPF assault, Wille v. Wisconsin Secure Program Facility, Case No. 13-cv-691-LA (E.D. Wis). On May 31, 2014, United States District Judge Lynn Adelman granted the plaintiff's motion to dismiss that case without prejudice. Dkt. No. 177.

10

required by Wis. Admin. Code DOC §310.09(1)(e) (Complaint shall "[c]ontain only one issue per complaint, and shall clearly identify the issue.").

The defendants contend that the statement is insufficient because it is not in the main section of the complaint and because the crux of the complaint is clearly the assault, not the transfer to WSPF. The defendants contend that the fact that ICRS staff did not interpret the complaint as the plaintiff objecting to the transfer supports this conclusion. They also argue that, even if ICRS staff had interpreted the complaint as the plaintiff objecting to the transfer, the complaint would have violated the one-issue-per-complaint rule. The plaintiff does not address these arguments.

A purpose of the exhaustion requirement is to allow prison officials time and opportunity to respond to complaints internally before an inmate initiates litigation. Porter v. Nussle, 534 U.S. 516, 524-25 (2002); Smith v. Zachary, 255 F.3d 446, 450-51 (7th Cir. 2001). To provide officials with sufficient notice, inmates must file grievances at the place and time and with the information required by the prison's administrative rules. Strong v. David, 297 F.3d 646, 649 (7th Cir. 2002). Where the rules are silent, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." Id. at 650; Riccardo v. Rausch, 375 F.3d 521, 524 (7th Cir. 2004).

Drawing on principles of notice pleading, the Seventh Circuit has held that, absent more stringent administrative requirements, an inmate need not state "facts, articulate legal theories, or demand particular relief," so long as the grievance objects "intelligibly to some asserted shortcoming." Strong, 297

11

F.3d at 650; Riccardo, 375 F.3d at 524. A defendant to a civil suit need not be named in an inmate's prison grievance to constitute exhaustion under 42 U.S.C. § 1997e(a), unless the administrative rule requires it. Strong, 297 F.3d at 649-50. With respect to the level of detail in an offender complaint, the DOC administrative rules require that offender complaints "[c]ontain only one issue per complaint, and shall clearly identify the issue." Wis. Admin. Code DOC §310.09(1)(e). Thus, the standard is whether the offender complaint would put an official on notice of the plaintiff's claim. See Strong, 297 F.3d at 650.

The plaintiff's statement in WCI-2013-7846 that "Stanley Staff" knew about potential problems with WSPF staff but that they "sent me anyways" should have placed prison officials on notice that the plaintiff challenged the transfer. E.g., Westefer v. Snyder, 422 F.3d 570, 580-81 (7th Cir. 2005) (substantive complaints about conditions at new facility were enough to place official on notice that inmates challenged the transfers themselves); Riccardo, 375 F.3d at 524 (finding that prisoner's grievance – which stated that "[t]he administration don't [sic] do there [sic] job. [A sexual assault] should've never [sic] happen again." – although "at the border of intelligibility," sufficed to put defendants on notice of prisoner's claim that defendants failed to protect plaintiff from sexual assault). The defendants do not cite to any ICRS rules which require that the content of complaint grievances be limited to certain sections of the complaint. Finally, although the defendants submit that the complaint would have violated the multiple issues rule if the ICRS officials had considered the transfer issue, they did not consider the issue—they addressed

12

the grievance on the merits. The court's role is to determine only whether the content of the grievance notified ICRS officials of the transfer claim, not to determine whether the officials would have returned or rejected the complaint if they had been so notified. See McDaniel v. Meisner, ___ F. App'x ___, 2015 WL 3407413, at *4 (7th Cir. 2015) (finding it inappropriate for district court to enforce an administrative requirement not relied upon by the examiner).

The court concludes that WCI-2013-7846 did place prison officials on notice, as required by Wisconsin's ICRS rules, that the plaintiff was alleging that staff knew he had concerns about being transferred to WSPF, but sent him anyway—in other words, his failure to protect claim. Thus, the defendants have not established that the plaintiff failed to exhaust administrative remedies. See Dole v. Chandler, 438 F3d 804, 809 (7th Cir. 2006) (exhaustion is an affirmative defense, and the burden of proof is on the defendants) (citation omitted). The court will deny the defendants' motion for summary judgment.

The defendants request a briefing schedule for dispositive motions on the merits. The court will hold a telephonic status conference to discuss future proceedings in this case.

The court **DENIES** the defendants' motion for summary judgment for failure to exhaust administrative remedies (Dkt. No. 88).

The court will hold a telephonic status conference on September 22, 2015 at 3:00 p.m. The parties should call the court's conference line at 888-557-8511 and use the access code 4893665#.

Dated at Milwaukee this 9th day of September, 2015.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge