UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**CAINE J. WILLE**,

                Plaintiff,

    v.

**JEFFREY PUGH,
SARAH BARTH,
MARIO CANZIANI,
KYLE ESLINGER, AND
CHRISTOPHER BUESGEN,**

                Defendants.

Case No. 13-cv-1024-pp

---

**DECISION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 97) AND DISMISSING THE CASE**

---

The *pro se* plaintiff, Caine J. Wille, is a former Wisconsin Department of Corrections inmate. The events alleged in his complaint concern his incarceration at Stanley Correctional Institution ("SCI"), and what he alleges was his improper transfer to the Wisconsin Secure Program Facility ("WSPF"). On April 18, 2014, Judge Adelman issued an order allowing the plaintiff to proceed on a failure to protect claim arising out of his transfer to WSPF, where correctional officers he had known him from high school allegedly sexually assaulted him. Dkt. No. 69.

On December 18, 2015, the defendants filed a motion for summary judgment, Dkt. No. 97, and a supporting brief, Dkt. No. 98. The plaintiff filed

1

his opposition brief on January 6, 2016, Dkt. No. 108, and the defendants filed their reply on February 4, 2016, Dkt. No. 110. Although he did not seek, or obtain, leave from the court, on March 9, 2016, the plaintiff filed a sur-reply. Dkt. No. 111. For the reasons stated below, the court grants the defendants' motion for summary judgment.

I.   **FACTS**[1]

A.   Parties

The plaintiff is a former inmate at the SCI. Dkt. No. 70. The defendants are employees at the SCI: Warden Jeffrey Pugh, Social Worker Sarah Barth, Deputy Warden Mario Canziani, Line Supervisor Kyle Eslinger, and Security Director Christopher Buesgen. Dkt. No. 99, ¶¶1, 3, 6, 8, 10.

B.   The Plaintiff's Allegations

On November 6, 2012, the plaintiff and another inmate engaged in a physical altercation at SCI. Id. at ¶15. An officer witnessed the altercation, and gave the plaintiff a conduct report. Id. Captain Steinke, the hearing examiner assigned to the matter, sentenced the plaintiff to serve 240 days of disciplinary segregation and referred him to the Program Review Committee ("PRC") to determine whether his custody status should change as a result of the conduct report. Id. at ¶¶15-16.

---

[1] The court takes the facts from the "Defendants' Proposed Findings of Fact in Support of Motion for Summary Judgment" (Dkt. No. 99); the court accepts those facts as true for purposes of this decision, because the plaintiff failed to respond to them. See Civil Local Rule 56(a)(1)(A) (E.D. Wis.). The court has taken additional facts from the plaintiff's sworn second amended complaint (Dkt. No. 70), which the Seventh Circuit has instructed district courts to construe as an affidavit at the summary judgment stage. Ford v. Wilson, 90 F.3d 245, 246-47 (7th Cir. 1996).

On November 21, 2012, social worker Sarah Barth interviewed the plaintiff on behalf of the PRC. Id. at ¶¶18-19. She concluded that the plaintiff should be moved to maximum security due to the severity of the physical altercation. Id. at ¶20. The PRC accepted her recommendation, and elevated the plaintiff's custody status to maximum security with transfer to WSPF general population. Id. at ¶21.

On December 30, 2012, the plaintiff requested an interview with Barth. Id. at ¶22. He stated in his request that he knew personally several of the correctional officers employed at the WSPF. See id. Specifically, he wrote that Boscobel is "right in my back yard" and that he "smoke[d] marijuana with a couple [of] COs and serve[d] [a] couple others alcohol in my bar and watch[ed] them drive off." Id.

After reviewing the plaintiff's interview request, Barth filed an incident report. Id. at ¶23. On January 3, 2013, Security Director Buesgen forwarded the incident report to Lieutenant Eslinger and asked him to investigate. Id. at ¶26. Eslinger interviewed the plaintiff, who said (among other things) that he knew a WSPF officer named Richard Matti who allegedly dealt drugs. Id. at ¶¶26-27. Eslinger deemed the plaintiff's allegations about his past interactions with WSPF staff as credible. Id. As a result, Eslinger recommended instituting a Special Placement Need ("SPN") for the purpose of separating the plaintiff from Matti. Id. Buesgen approved the SPN on January 10, 2013. Id. at ¶28.

On February 14, 2013, the plaintiff left SCI to travel to Dodge Correctional Institution, the transfer location. Id. at ¶32. A week later, on

3

February 20, 2013, correctional employees improperly transferred the plaintiff to WSPF (specifically, to general population at WSPF, referred to as WSGP). Id. More specifically, the computer program used to track inmate movement—the Wisconsin Integrated Corrections System ("WICS")—erroneously sent a notification to the Bureau of Offender Classification Movement ("BOCM"), the organization responsible for scheduling transportation, indicating that it should transfer the plaintiff to "WSGP." Id. at ¶¶ 31-32. At that time, WICS listed WSPF's "general population" as "WSGP," and the computer recognized "WSPF" and "WSGP" as two different locations. Id. As a result, the SPN did not prevent the plaintiff from being transferred to WSPF. Id. Instead, the SPN at WSPF caused the computer system to reassign him to WSGP, which is actually the general population WSPF. Id.

On February 23, 2013, WSPF Correctional Officer Nicole Nelson (not a defendant in this case) recognized the plaintiff as someone she knew from high school. Id. at ¶40. Nelson informed WSPF Captain Daryl Flannery (also not a defendant in this case) that the plaintiff could provide information about her to other inmates. Id. With Captain Flannery's permission, Officer Nelson and Sergeant Mathew Scullion (also not a defendant in this case) removed the plaintiff from his cell and ordered him not to reveal Nelson's full name to other inmates. Id. The plaintiff agreed, and the correctional officers escorted him back to his cell. Id. Four days later, on February 27, 2013, the Department of Corrections transferred the plaintiff to Waupun Correctional Institution. Id. at ¶32.

4

On April 12, 2013, the security director at WCI received from the plaintiff a sexual assault complaint against Nelson and Scullion. Id. at ¶41. He alleged that on February 23, 2013, the officers had threatened him and sexually assaulted him when they took him out of his cell. Id. Waupun Correctional Institution Staff commenced a Prison Rape Elimination Act ("PREA") investigation, and began to monitor the plaintiff's mail. Id. at ¶¶41-44. They found a letter from the plaintiff to another inmate, which stated that the plaintiff lied about the rape allegations because the officers threatened his child. Id. at ¶44. The PREA investigation concluded that the plaintiff had fabricated his sexual assault allegations. Id. at ¶45.

**II.     DISCUSSION**

    A.    Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). The movant bears the burden of establishing that there are no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must designate specific facts that establish that there is a genuine triable fact. Fed. R. Civ. P. 56(e). The court grants summary judgment when no reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

5

B.  The Standard for Proving Deliberate Indifference

The Eighth Amendment protects an inmate's right to humane conditions of confinement. Farmer v. Brennan, 511 U.S. 825, 832 (1994). To state a failure to protect claim, a plaintiff must show that a prison official was "deliberately indifferent" to a substantial risk of serious harm to inmate health or safety. Id. at 834. "A substantial risk of serious harm is one in which the risk is 'so great' that it is 'almost certain to materialize if nothing is done.'" Delgado v. Stegall, 367 F.3d 668, 672 (7th Cir. 2004). Vague threats communicating a general risk of violence are not sufficiently substantial under the standard. Butera v. Cottey, 285 F.3d 601, 603-07 (7th Cir. 2002). Instead, an inmate must show that he complained about the specific threat that actually occurred. See id.

A prison official is deliberately indifferent when he or she knows of a substantial risk of serious harm and either acts or fails to act in disregard of that risk. Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011). Deliberate indifference requires "more than an ordinary lack of due care for the prisoner's interests or safety." Whitely v. Albers, 475 U.S. 31, 319 (1986). The plaintiff must show that the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Del Raine v. Williford, 32 F.3d 1024, 1032 (7th Cir. 1994). The official must both [have] be[en] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must [have] also draw[n] the inference." Id. It is not enough that a reasonable prison official would or should have known that the prisoner was at risk; the

6

official must actually know of and disregard the risk to incur culpability. Farmer, 511 U.S. at 837-38.

        C.    <u>There are no genuine disputes as to any issues of material fact.</u>

The court must accept as true the defendants' proposed findings of fact, because the plaintiff did not respond to them. <u>See</u> Civil Local Rule 56(a)(1)(A) (E.D. Wis.). Further, the plaintiff's opposition brief concedes that "[e]ither party can agree on the series of events that took place." Dkt. No. 108 at 1. The court finds, therefore, that there are no genuine disputes as to any issues of material fact.

        D.    <u>The defendants were not deliberately indifferent as a matter of law.</u>

            *1.*    *The defendants were not aware of a substantial risk of serious harm.*

The record is devoid of evidence that the defendants were aware of a substantial risk of serious harm. The plaintiff's interview request notifying the defendants of a substantial risk of serious harm stated that he knew several WSPF officers who used drugs. He also stated that he knew a particular officer who currently trafficked drugs. The plaintiff indicated that he may be at "risk" due to his knowledge of this compromising information, but he did not provide any other information.

As discussed above, general threats of violence are not sufficient to establish an "awareness" of a substantial risk of serious harm. Instead, the plaintiff must allege specific threats to his health and safety to put the defendants on notice of the particular harm facing the plaintiff. The plaintiff did not notify SCI staff about specific threats of a sexual assault from WSPF

correctional officers. Therefore, the defendants were not aware of a substantial risk of a serious harm.

>   2.  *The defendants acted reasonably when notified of the potential harm.*

Even if the defendants had been aware of a risk of a sexual assault, the defendants acted reasonably when notified of the potential harm. Sarah Barth, who was the first individual notified of the potential safety risk at WSPF, immediately drafted an incident report and sent it to Christopher Buesgen, the security director, for review. Barth had no further involvement in the matter. Buesgen, in turn, asked Kyle Eslinger to investigate, and Eslinger recommended instituting an SPN to keep the plaintiff away from correctional staff at WSPF. Eslinger then had no further involvement in the matter. Buesgen followed up by approving the SPN, then had no further involvement in the matter.

Each named defendant did what their job required them to do to protect the plaintiff's health and safety. No reasonable jury could conclude that the defendants "consciously disregarded" the risk to the plaintiff's safety. To the contrary, all named defendants who received information about a possible security risk took action to ensure that the plaintiff would not be transferred to a location that posed a safety threat. Mario Canziani, the other named defendant, never received any notification about the potential safety risk to the plaintiff.

Individuals employed by the Department of Corrections, through a computer error, did improperly transfer the plaintiff to WSGP. There is no

8

indication in the record, however, that any of the named defendants were personally involved in the error. Any individuals who were involved in that error were, at most, negligent in failing to ensure that the computer contained correct information. For the plaintiff to prove an Eighth Amendment claim, he must prove more than mere negligence. See, e.g., Farmer v. Brennan, 511 U.S. 825, 835 (1994); Watts v. Laurent, 774 F.2d 168, 172 (7th Cir. 1985) ("conduct that simply amounts to 'mere negligence or inadvertence' is insufficient to justify the imposition of liability" under the Eighth Amendment); Borello v. Allison, 446 F.3d 742, 747 (7th Cir. 2006) ("Proving deliberate indifference . . . requires more than a showing of negligent or even grossly negligent behavior.").

Finally, when correctional staff discovered the error, WSPF promptly transferred the plaintiff to Waupun Correctional Institution.

In sum, the record fails to demonstrate that the defendants knew of a potential risk of serious harm and that they intentionally failed to prevent it. The court finds, therefore, that the defendants were not deliberately indifferent under the law.

### 3. *The plaintiff did not suffer a serious harm.*

"Section 1983 is a tort statute, which means that the defendant must breach a duty owed to the plaintiff, who must suffer a cognizable legal harm." Doe v. Welborn, 110 F.3d 520, 523 (7th Cir. 1997) (citing Babcock v. White, 102 F.3d 267, 271 (7th Cir. 1996)). An inmate who suffers "a failure to prevent exposure to risk of" physical harm is not entitled to compensation. See Babcock v. White, 102 267, 272 (7th Cir 1996).

9

The record evidence before the court supports the conclusion that the sexual assault did not occur. The defendants' proposed findings of fact assert that Officer Nelson and Sergeant Scullion did not sexually assault the plaintiff. The plaintiff conceded in a letter to another inmate that he fabricated the sexual assault allegation. The plaintiff no longer appears to dispute the defendants' assertion that he fabricated the sexual assault allegation.[2] Instead, he now appears to take the position that the defendants relied on "illegally obtained information" (Dkt. No. 111 at 2) in determining that Nelson and Scullion did not rape the plaintiff, and argues that for this reason, the court should allow the case to proceed to trial.

The plaintiff's argument is without merit. The issue is not how the officers found out that he was not sexually assaulted. It is the fact that, because he was not sexually assaulted, he cannot allege that he suffered a cognizable harm.

## III. CONCLUSION

Because there are no genuine disputes as to issues of material facts, because the defendants were not aware of a substantial risk of harm, because the defendants acted reasonably when they learned of facts that might indicate a risk, and because the plaintiff did not suffer a cognizable harm, the court will

---

[2] The plaintiff has not filed any documents with the court (such as a proposed findings of fact or a sworn affidavit) supporting the claim that Nelson and Scullion sexually assaulted him. He also does not make this assertion in either of the two summary judgment briefs he filed with the court (Dkt. Nos. 108, 111).

grant the defendants' motion for summary judgment, and dismiss the complaint.

The court **GRANTS** the defendants' motion for summary judgment. Dkt. No. 97.

The court **DISMISSES** this case.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 16th day of August, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge